UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICK HAMILTON, et al., | Case No. 1:20-cv-00484-EPG |
| Plaintiffs, | ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITHOUT LEAVE TO AMEND |
| v. | |
| COUNTY OF MADERA, et al., | (ECF No. 29) |
| Defendants. | |

Before the Court is a motion to dismiss filed by Defendants County of Madera, Madera County Board of Supervisors, Tom Wheeler, Matt Treber, Deborah Mahler, and John Reed ("Defendants"). (ECF No. 29.) The parties have consented to the jurisdiction of a United States Magistrate Judge for all purposes, including entry of final judgment. (ECF Nos. 43, 48.) For the following reasons, the Court will grant Defendants' motion to dismiss without further leave to amend the complaint.

## I. **BACKGROUND**

This case stems from a multi-year dispute between residential property owners, Plaintiffs Rick Hamilton and Kris Hamilton ("Plaintiffs"), and the County of Madera. As alleged in the Third Amended Complaint ("TAC"), those disputes began as early as 2016 and have lasted until the present and concern various issues, including permitting for water, fire code enforcement, the cause of a residential fire, and the use of short-term vacation rentals. (*See* ECF No. 27.) Over the

span of five years, Plaintiffs have communicated, protested, and litigated their views in various ways, including board meetings, letter campaigns, and at least one state court case. (*Id.*)

Plaintiffs filed their initial complaint in the present case on April 2, 2020. (ECF No. 1.) On June 30, 2020, Plaintiffs filed their First Amended Complaint. (ECF No. 6.) The First Amended Complaint was 59 pages long and listed six claims, including violations of the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment and four state law claims. (*Id.*) Defendants filed a motion to dismiss on August 18, 2020. (ECF No. 11.) On February 18, 2021, Plaintiffs filed a motion seeking leave to file a Second Amended Complaint. (ECF No. 17.) The proposed Second Amended Complaint was 110 pages long and added several causes of action. (*See id.*) The motions to dismiss and for leave to amend were referred to the undersigned for issuance of findings and recommendations. (ECF Nos. 16, 18.)

On April 22, 2021, the Court entered findings and recommendations recommending that Plaintiffs' motion for leave to file a proposed Second Amended Complaint be denied and that Defendants' motion to dismiss be granted for failure to comply with Federal Rule of Civil Procedure 8(a)'s requirement of a short and plain statement of the claims. (ECF No. 25.) The Court recommended that any amended complaint, including exhibits be limited to 35 pages and that all claims for relief refer to specific allegations or otherwise clearly describe what actions by specific defendants violated Plaintiffs' rights. (ECF No. 25.) On June 28, 2021, District Judge Dale A. Drozd entered an order adopting the findings and recommendations in full. (ECF No. 26.) Specifically, Judge Drozd's order stated:

> Plaintiffs are granted leave to file a third amended complaint within thirty days of the date of this order should they elect to pursue this action. Such third amended complaint, including its exhibits, must be no longer than 35 pages in length, and all claims for relief asserted therein must include specific allegations or otherwise clearly describe what actions by which defendants allegedly violated plaintiffs' rights.

(*Id.* at 2.)

Plaintiffs filed the TAC on July 23, 2021 (ECF No. 27.) On August 13, 2021, Defendants filed a motion to dismiss the TAC. (ECF No. 29.) Plaintiffs filed an opposition on August 30, 2021. (ECF No. 33.) Defendants filed a reply on September 17, 2021. (ECF No. 34.) On

September 24, 2021, the Court held a hearing on the motion and the parties appeared telephonically through counsel. (ECF No. 39.)

## II.        PLAINTIFFS' THIRD AMENDED COMPLAINT

The TAC describes Plaintiffs' disputes with the County of Madera and its Board of Supervisors starting in 2016. (ECF No. 27.) Although those disputes are numerous and not entirely clear, they include the following:

- The County's policy to allow operations of short-term vacation rentals ("STVRs") in single-family dwellings in residential neighborhoods without requiring a conditional use permit ("CUP").
- Collection of taxes and assessments from STVRs in contravention of the Madera County Code's ("MCC") provisions.
- Enforcement of fire and safety codes regarding a dry well on a neighboring STVR property.
- Issuance of permits for multifamily residential hotel units on a neighboring property that had a Williamson Act designation.
- Plaintiffs' zoning complaint concerning the issuance of business licenses to two STVRs on Plaintiffs' street in 2016.
- A 2017 state court lawsuit against an STVR operator in Plaintiffs' neighborhood.
- The County's 2017 amendments to the MCC's zoning ordinances codifying the STVR policy.
- Various disputes regarding permits to modify a shared water system spanning Plaintiffs' property and a neighboring parcel.

(*Id.*)

The TAC names the County of Madera, the Madera County Board of Supervisors,[1] Tom Wheeler, Matt Treber, Deborah Mahler, and John Reed as defendants and asserts the following causes of action: 1) violation of the First and Fourteenth Amendment pursuant to 42 U.S.C. §

---

[1] As Defendants note in their motion, the Madera County Board of Supervisors is named as a defendant in the body of the TAC but not in the caption.

1983 and conspiracy under 42 U.S.C. § 1985; 2) "Equal Protection and Enforcement" under 42

U.S.C. § 1983 and violation of procedural due process under the Fourteenth Amendment; 3)

violation of the "Fourteenth Amendment Right to Equal Protection and Enforcement under 42

U.S.C. § 1983 – (Retaliation) and Due Process" and the California Constitution's due process

clause; 4) violations of mandatory duties under California Government Code § 815.6 and the

Fourteenth Amendment under 42 U.S.C. § 1983; and 5) violation of the California Constitution,

the Fair Housing Act, 42 U.S.C. § 3601, *et seq.*, and housing discrimination pursuant to

California Government Code § 65008. (ECF No. 27.)

### III.    DEFENDANTS' MOTION TO DISMISS

Defendants move to dismiss the TAC on various grounds, including because the

complaint violates Federal Rule of Civil Procedure 8, Plaintiffs' claims are time-barred under the

applicable statute of limitations, Plaintiffs do not clearly define a class and constitutional right,

liability was expressly exempt by statute, and Plaintiffs lack standing. (ECF No. 29 at 1-2.)

Defendants first argue that the TAC again violates Rule 8. (ECF No. 29-1 at 10.) The

caption removes the Madera County Board of Supervisors, but the complaint names it as a

defendant, so it is unclear whether they have been dismissed or not. (*Id.* at 11.) Additionally, "the

claims themselves are an amalgamation of vague legal theories" and the factual bases for

Plaintiffs' claims are unclear. (*Id.* at 11-12.) Plaintiffs' jurisdictional allegations are likewise

confusing and refer to irrelevant statutes. (*Id.* at 12.)

Next, Defendants argue that the TAC's allegations in support of the first cause of action

are unclear but Plaintiffs appear to allege that the STVR policy violates procedural due process

and equal protection under the Fourteenth Amendment as well as Plaintiffs' rights to petition

under the First Amendment. (ECF No. 29-1 at 12-13.) As to the procedural due process theory,

Defendants contend that Plaintiffs are non-applicants who do not have a protected property

interest in a CUP hearing and their claim is also time-barred under the applicable two-year statute

of limitations. (*Id.* at 13-14.) The equal protection claim also fails because there are no allegations

of unequal treatment in that the lack of hearing for an STVR is the same for all residential

property owners. (*Id.* at 14.) Additionally, any claims for violations prior to April 2018 are time-

barred, and Plaintiffs lack standing. (*Id.* at 14-16.) The First Amendment right to petition claim

fails because Plaintiffs have not alleged any violations of a right guaranteed by the First

Amendment and their claims against the individual Defendants are time-barred. (*Id.* at 16-18.)

As to the second cause of action for "Equal Protection and Enforcement" related to the

County's selective enforcement of fire, water, and building codes, Plaintiffs' claims are time-

barred and the County cannot be held liable for a wildfire resulting from the alleged insufficient

enforcement. (ECF No. 29-1 at 19-20.) Plaintiffs' procedural due process claims in the second

cause of action also fail because, as with the first cause of action, a non-applicant does not have a

right to a CUP hearing. (*Id.* at 21.)

Next, Defendants note that the third cause of action appears to allege a claim for violation

of Plaintiffs' First Amendment rights, although the caption does not reference the First

Amendment. (ECF No. 29-1 at 21.) Defendants again argue that Plaintiffs have not alleged any

violation of a right guaranteed by the First Amendment. (*Id.* at 21-22.) Plaintiffs also assert a

Fourteenth Amendment due process claim related to the 2017 legislative process to codify the

STVR process, but Defendants argue that any recourse for this claim was through a state court

action, and the time to file such an action has passed. (*Id.* at 22.)

As to the third cause of action, Defendants contend that Plaintiffs' Fourteenth Amendment

equal protection claim fails because they do not identify the protected class to which they belong.

(ECF no. 29-1 at 22.) Plaintiffs cannot assert a "class of one" equal protection claim because they

have not alleged facts demonstrating that they were similarly situated or that there is no rational

basis for the County's actions or inactions. (*Id.*) Plaintiffs' claim for violation of the California

Constitution's Equal Protection Clause is substantially the same as the analysis for the Fourteenth

Amendment claim. (*Id.* at 23-24.)

Defendants next argue that Plaintiffs' fourth cause of action for violations of mandatory

duties under California Government Code § 815.6 fails for four reasons. (ECF No. 29-1 at 24.)

First, Plaintiffs have not alleged compliance with the California Government Claims Act. (*Id.*)

Second, the claim is time-barred under the applicable two-year statute of limitations. (*Id.* at 26.)

Third, liability can only exist where the mandatory duty at issue was designed to protect against

the risk of a particular injury and the Williamson Act was not designed to prevent wildfires. (*Id.* at 25.) Plaintiffs' fourth cause of action also references a Fourteenth Amendment equal protection violation regarding a 2018 denial of a request to build a house that was not in compliance with the Williamson Act, but do not allege that they were in a protected class or suffered any arbitrary treatment from those similarly situated. (*Id.* at 26.) Further, Plaintiffs' claims are time-barred under the statute of limitations. (*Id.*)

Finally, with respect to the fifth cause of action, Plaintiffs fail to state a claim for housing discrimination in violation of the California Constitution, Fair Housing Act, 42 U.S.C. § 3701, *et seq.*, and California Government Code § 65008. (ECF No. 29-1 at 27.) Plaintiffs' Fair Housing Act claim does not allege any facts demonstrating that the STVR policy has a discriminatory impact or that they are aggrieved persons under the Fair Housing Act. (*Id.* at 27-28.) Additionally, this claim is also time-barred. (*Id.* at 28.) Likewise, Plaintiffs do not allege any facts in support of their conclusion that Defendants knowingly implemented a policy to reduce availability of housing for low-income and moderate-income residents. (*Id.*)

## IV.  LEGAL STANDARDS

### A.  Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction. *Gunn v. Minton*, 568 U.S. 251, 256 (2013) ("Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute.") (internal quotation marks omitted). There are two bases for federal subject matter jurisdiction: federal question and diversity. Under federal question jurisdiction, federal district courts "have original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Under diversity jurisdiction, federal district courts "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different states. . . ." 28 U.S.C. § 1332(a). Plaintiff, as the party invoking federal jurisdiction, "has the burden of proving the actual existence of subject matter jurisdiction." *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996).

///

Numerous courts have cautioned against resolving local zoning and land use issues in federal courts. "[A] federal claim involving land use must be viewed with particular scrutiny because it challenges local zoning decisions, a sensitive area of social policy best resolved without resort to federal court intervention, absent sufficient allegations of constitutional error." *Arroyo Vista Partners v. Cty. of Santa Barbara*, 732 F. Supp. 1046, 1050 (C.D. Cal. 1990). "[F]ederal courts do not sit as a super zoning board or a zoning board of appeals." *Id.*; *Raskiewicz v. Town of New Boston,* 754 F.2d 38, 44 (1st Cir. 1985) *cert. denied Raskiewicz v. Town of New Boston,* 474 U.S. 845 (1985) (where the state offers a panoply of administrative and judicial remedies, litigants may not ordinarily obtain federal court review of local zoning and planning disputes by means of 42 U.S.C. § 1983); *Sullivan v. Town of Salem,* 805 F.2d 81, 82 (2d Cir. 1986) (reasoning that federal courts "should not become zoning boards of appeal to review nonconstitutional land use determinations").

Additionally, "[i]t is well settled that the availability of a state remedy bars a section 1983 due process claim." *Citizens for Free Speech, LLC v. Cty. Of Alameda,* 2020 WL 999644, at *7 (N.D. Cal. Mar. 2, 2020); *see, e.g., Lake Nacimiento Ranch Co. v. San Luis Obispo Cty.*, 841 F.2d 872, 875, 878-79 (9th Cir. 1987) (rejecting a due process claim predicated upon an allegedly biased vote by the county board of supervisors on a proposed zoning amendment); *Arroyo Vista Partners v. County of Santa Barbara*, 732 F. Supp. 1046, 1052-53 (C.D. Cal. 1990) (dismissing a procedural due process claim challenging a board of supervisor's zoning decision, finding that a writ under section 1094.5 provided a sufficient remedy to address the plaintiff's claims of procedural deficiencies in the hearing process).

### B.  Motion to Dismiss

In considering a motion to dismiss, the Court must accept all allegations of material fact in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Hosp. Bldg. Co. v. Rex Hosp. Trustees*, 425 U.S. 738, 740 (1976). The Court must also construe the alleged facts in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994) (*per curiam*). All ambiguities or doubts must also be resolved in the plaintiff's favor. *See Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).

A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the complaint. *See Iqbal*, 556 U.S. at 679. The first step in testing the sufficiency of the complaint is to identify any conclusory allegations. *Iqbal*, 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations and quotation marks omitted).

After assuming the veracity of all well-pleaded factual allegations, the second step is for the court to determine whether the complaint pleads "a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). The standard for plausibility is not akin to a "probability requirement," but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

### C.      Rule 8

Federal Rule of Civil Procedure 8 provides:

(a) CLAIM FOR RELIEF. A pleading that states a claim for relief must contain:
    (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
    (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
    (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed. R. Civ. P. 8(a).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).
///

1    Although a complaint is not required to include detailed factual allegations, it must set

2    forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

3    face.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). It must also contain

4    "sufficient allegations of underlying facts to give fair notice and to enable the opposing party to

5    defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Moreover, Plaintiff

6    must demonstrate that each named defendant personally participated in the deprivation of his

7    rights. *Iqbal*, 556 U.S. at 676-77.

8    "A complaint having the factual elements of a cause of action scattered throughout the

9    complaint and not organized into a 'short and plain statement of the claim' may be dismissed for

10   failure to satisfy Rule 8(a)." *Saunders v. Saunders*, 2009 WL 382922, at *2 (E.D. Cal., Feb. 13,

11   2009). Thus, a court may dismiss a complaint for failure to comply with Rule 8(a) if it is

12   "verbose, confusing and conclusory." *Nevijel*, 651 F.2d at 674. "When a complaint fails to

13   comply with the requirements of Rule 8(a), the district court has the power, on motion or sua

14   sponte, to dismiss the complaint…." *Marshall v. United Nations*, 2006 WL 1883179, at *3 (E.D.

15   Cal. July 6, 2006) (citing *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)).

16   Complaints that repeatedly incorporate all preceding paragraphs by reference—sometimes

17   called shotgun pleadings—have been found to violate Rule 8. *Weiland v. Palm Beach Cty.*

18   *Sheriff's Off.*, 792 F.3d 1313, 1321 (11th Cir. 2015) ("The most common type [of shotgun

19   pleading]—by a long shot—is a complaint containing multiple counts where each count adopts

20   the allegations of all preceding counts, causing each successive count to carry all that came before

21   and the last count to be a combination of the entire complaint."); *Deerpoint Grp., Inc. v.*

22   *Agrigenix, LLC*, 345 F. Supp. 3d 1207, 1234 n.15 (E.D. Cal. 2018) ("It is true that Paragraph 144

23   incorporates by reference Paragraphs 1 to 143. However, incorporating literally all 143 preceding

24   paragraphs, without specific reference to either disparagement or Paragraph 81, does not give

25   Defendants (or the Court) fair notice of the factual bases of the IIPEA claim." (citing *Weiland*,

26   792 F.3d at 1321-23)); *Caruso v. Hill*, 2020 WL 4018141, at *11 (E.D. Cal. July 15, 2020)

27   ("[W]hile an amended complaint may incorporate by reference any prior paragraphs that are

28   necessary to pleading a plausible cause of action, the amended complaint may not use the

improper expedient of simply incorporating by reference all prior paragraphs, be they supportive

or relevant to the cause of action or not, since such a practice does not provide adequate notice for

purposes of Rule 8.").

## V.     ANALYSIS

### A.     Rule 8

Defendants first argue that the TAC violates Rule 8 because it does not "clearly convey

who is being sued, the facts that support the claims, and how the legal theory is applied to entitled

Plaintiffs to relief." (ECF No. 29-1 at 10.) Plaintiffs argue that they "fail to see how there is any

confusion" because the TAC clearly states who as being sued and the relevant claims for relief.

(ECF No. 33 at 7-8.)

Plaintiffs' TAC violates Rule 8(a) because it fails to make a short and plain statement

showing that Plaintiffs are entitled to relief. The TAC, like the FAC and SAC before it, consists

of a long narrative referencing many years of disputes between Plaintiffs and the County of

Madera. The factual statement is 53 paragraphs long. The following is a representative portion of

one dispute described in the TAC's factual recitation:

> 30. In 2017, the HAMILTONS challenged the legality of a STVR use in their
> neighborhood that they believed violated their CC&Rs (by a contract enforcement
> action) by suing the operator. The operator happened to be a realtor associated
> with the operators for a large portion of the STVR operations in Eastern
> MADERA COUNTY.
> 31. In March 2017, State Court Defendant, Marie Iden, sent a series of urgent
> requests to TREBER and WHEELER requesting intervention by MADERA
> COUNTY on her behalf to assist in her defense of the pending State lawsuit.
> 32. On March 2, 2017, Iden sent an email to TREBER, stating: "Tom Wheeler
> called (me) this afternoon … He said Norm changing this 'bad' code was started a
> few months ago (cleared by Council) be through Planning Commission and ready
> for BOARD OF SUPERVISORS. Can you check on this Matt and update us?"
> 33. MADERA COUNTY offered the State court Defendants legal assistance and
> expert testimony of TREBER and made changes to several zoning ordinances to
> prevent the entry of a permanent injunction. Initially, the zoning changes where to
> delete the three specific definitions for categories of "lodging" that the
> HAMILTONS identified in their Complaint.
> 34. In February and March of 2017 WHEELER, REED and TREBER
> misrepresented to the BOS and to the public that the terms involved in the
> litigation were "not contained in any other codes". These terms were contained in
> MCC TOT chapters, the Madera General Plan, and the 2016 California Fire Code
> (hereinafter generally "Fire Code" or specifically Cal. Code Regs. tit. 24 section.)
> which is adopted by the Madera COUNTY Ordinances.
> 35. On March 20, 2017, Iden sent WHEELER an email regarding the vote for the
> term deletions stating: "Hopefully no one but us will show up and then you vote

and we go silently along our way Marie Iden." WHEELER responded to Ms. Iden: "[thumbs up emoji x 3]."

36. The term deletions in CZ#2016-012 specifically deleted three definitions at issue in the HAMILTON/Tooms Complaint. The Complaint alleged that the Iden Defendants' Airbnb operation was a "bed and breakfast", "lodging house", "boarding house" or "tourist home" within the meaning of the ordinances. These terms were critical to the suit and the changes were specifically cited by the Court in the statement of decisions for the preliminary injunction, and the final judgment. These changes were so hurried that they actually were inserted for BOS consideration without getting the Planning Commission approval required by state law. The sudden changes were represented to the BOS and the public as those that had been considered for a long time and were just "clean up" of terms that were "not found" anywhere else in the codes.

37. Based on clearly established law at that time, and consistent with the COUNTY's Ordinances, the State court issued a preliminary injunction against the State court Defendants, enjoining them from continued violations of the CC&Rs prohibition against zoning violations. The court ruled:

> " ... Plaintiffs sustained their burden of making out a prime facie case ... prior to the presentation of evidence by Defendants - - that short-term rentals on properties in the RRS-5 zone in MADERA COUNTY were prohibited prior to the amendment of Section 18.1 1.100.C to the MADERA COUNTY Zoning Ordinance on July 18, 2017 and therefore were ... prohibited by the Declaration of Restrictions governing the parties' properties prior to the amendment thereof on May 24, 2017."(emphasis added)

38. State court Defendant Iden contacted WHEELER after the issuance of the Preliminary Injunction, stating that they were going to lose the lawsuit and again urged a "clarification" of the "rental" zoning ordinance.

39. Defendant Iden told TREBER and WHEELER by email, that in her attorney's opinion this could potentially interfere with all STVRs across the COUNTY, and particularly the Bass Lake area where she and others that WHEELER and TREBER knew had significant interests.

40. REED and TREBER prepared and submitted to the BOS a proposal to amend the residential zoning chapter of the MCC to include and to define residential rental property" (i.e., vacation rental, short term rental"). This was part of a larger ordinance proposal for adding "accessory dwelling units" (hereinafter "ADU"). This proposal falsely stated that the accessory structure changes were necessary at that time to comply with a recently passed state law to protect "residential" units when in fact, they made changes that benefited "transient uses" and violated the limitations of the law they were intended to implement. Specifically, Senate Bill 1069 provides that ADU ordinances may only authorize the "duration" to be 1) "longer than 30 days"; and 2) that ADUs can be "owner-occupied". SB1069 prohibited COUNTY's ADU ordinances from being passed to benefit allowed transient and non-resident (owner) uses. This was a purposeful attempt to circumvent other laws and the changes were just the addition of a few words totally unrelated to ADUs buried in the middle of 200 pages of materials

41. TREBER provided misleading and false statements to Madera COUNTY Superior Court in the prior State Court litigation, in order to prevent interference with the illegal tax collection practices and STVR Policy of enforcement. He provided sworn testimony regarding the legality of their policy and practices, as the formal position of MADERA COUNTY and that the changes were to "clarify" MADERA COUNTY'S Policy. TREBER and COUNTY Counsel, Regina Garza, have stated that these were not "amendments" but a "clarification" of an existing

policy.

42. TREBER's contradictory statements in his testimony also confirmed how MADERA COUNTY justified the STVR Policy: 1) the MCC did not contain provisions that allowed the STVR use in residential zoning; 2) transient lodging such as hotels, motels, and other commercial uses are prohibited in residential neighborhoods; 3) STVRs were permitted because STVR were only used by single "families" ; 4) STVRs were not hotels because they did not have staff on site and this was a major distinguishing feature of hotels; 5) STVRs did not qualify for the "home occupation" exemption and instead were treated as a use "incidental" to or "by right" for single-family residential homes; 6) that the CUP process was considered "by right" for bed and breakfasts and an "entitlement for impacted neighbors; 7) that MADERA COUNTY disfavored the CUP process because of that entitlement.

43. Based on the MCC and TREBER's testimony, it is clear that the ordinance changes did not actually work to make STVR uses of single family dwellings in residential zoning legal.

44. Following the amendments to the ordinances, the HAMILTONS amended their CC&Rs based upon the advice of legal counsel that this was the only legal way now to enforce the STVR prohibition; as a result the Court declined to grant a permanent injunction. After the CC&R amendment, the neighbors informed the Court that they would no longer operate the STVRs against the new CC&Rs. The Court found that this voluntary cessation rendered a permanent injunction unnecessary.

45. The HAMILTON's were denied costs in the order issued in April, 2018 and incurred $178,551.25 in attempting to enforce the legally required zoning that MADERA COUNTY refused to enforce under the STVR Policy. In 2021, the Court of Appeal found that because the HAMILTONS did not prevail because the HAMILTONS "failed to meet their litigation objective" of permanent injunction they are liable for attorneys' fees in an amount yet to be determined by the Court but in excess of $300,000.00. That matter is currently remanded to the Superior Court for a decision on the amount of the fees.

46. In October 2018, KRIS HAMILTON requested that Todd Miller audit the TOT. Mr. Miller stated that, "It has never been done and there is ample evidence from COUNTY officials' own public comments it has not been done correctly." The HAMILTONS have continued to investigate the ordinance changes and TOT practices since their prior lawsuit concluded in 2018. They have encountered some difficulty in obtaining information from the COUNTY. The information that they did obtain reinforces why MADERA COUNTY would not want further investigation into their illegal practices.

(ECF No. 27 at 9-14.)

The TAC then sets forth several causes of action consisting of multiple claims against numerous defendants, without clearly stating who did what or linking the factual allegations to each claim and each defendant. For example, the first cause of action alleges:

**FIRST CLAIM FOR RELIEF**
**STVR Policy and Enforcement Violate the Public and Hamiltons Rights Under the First and Fourteenth Amendment (42 U.S.C. §1983); Conspiracy (42 U.S.C. 1985;**
**(Against MADERA COUNTY, WHEELER (in an individual and official capacity), TREBER (in an individual and official capacity), REED (in individual and official capacity))**

1

. . .

2

3       69. In 2016, 2020 and 2021 the HAMILTONS were denied equal protection of the law in that MADERA COUNTY did not provide notice and a hearing for issuance of licenses and approvals of uses in single family residential of their rental properties pursuant to the STVR Policy.

4

5       70. The STVR Policy: requires less formal enforcement of zoning codes only for operators of "lodging" in "single family residential" and therefore prefers owners

6       of STVR units over residential owners by allowing them to operate as a hotel/motel without requiring the CUP that other commercial uses of residential

7       property require. Additionally, by not requiring the CUP for "whole house" rentals, MADERA COUNTY prefers the non-resident operators over those

8       lodging providers that are "owner occupied" (i.e., Bed and Breakfast). This specifically prefers short term residents over long term residents while claiming

9       that the tenure policy treats all residents "of any duration" the same. Thereby, the STVR Policy selectively enforces the zoning codes and denies long term residents

10      the equal protection of the law.

11      71. The STVR Policy enforcement violates equal protection rights of the public and the HAMILTONS by failing to either have adequate procedure to ensure the

12      CUP process is followed and/or in violating the sections that provide for that procedure.

13

14      72. The HAMILTONS and public have a First Amendment right to the conditional use process, and the HAMILTONS have exercised their First Amendment Right to Petition by their multiple requests for enforcement of zoning and local regulations.

15      The HAMILTONS have also through media and advocacy, attempted to expose MADERA COUNTY's concealment of the fact that it has been illegally collecting

16      taxes as a result of its illegal enforcement of housing codes, and specifically by wrongfully aggregating housing units. MADERA COUNTY employed a policy of

17      collecting these amounts for more units than they were legally entitled to.

18      73. The STVR Policy by specifically targeting procedural due process rights and entitlement to a CUP hearing where properties are impacted by the non-

19      conforming use, this violates First Amendment Rights. MADERA COUNTY enforces the STVR in a manner specifically to avoid the CUP process, therefore,

20      the STVR Policy enforcement is targeted at constitutionally protected rights, including First Amendment Rights, and is specifically implemented to avoid a due

21      process entitlement, of the public and impacted property owners, including the HAMILTONS.

22

23      74. Therefore, the selective enforcement Policy violates both the procedural due process rights of the HAMILTONS and public as set forth above. These are well-

24      established constitutional right known to TREBER and MADERA COUNTY knew of the entitlement and violated those rights purposefully.

25      (ECF No. 27 at 18-19.)

26      Even under a liberal standard of pleading, Plaintiffs' claims are inadequately pled. As the

27      Defendants note, it is difficult to ascertain what claims Plaintiffs have pled in each cause of

28      action, which facts support each claim, and how each Defendant allegedly violated Plaintiffs'

1    rights. Plaintiffs' claims each refer to several different legal theories and incorporate lengthy

2    factual allegations regarding the history of their dispute with the County. The TAC does not

3    clearly state the specific claims Plaintiffs intend to assert, what the bases for those claims are, and

4    how, if at all, any of the facts in Plaintiffs' narrative of their dispute relate to them. As a result,

5    the Court cannot sufficiently determine what claims are being asserted against whom based on

6    what facts.

7         In the findings and recommendations to grant Defendants' motion to dismiss the FAC and

8    deny Plaintiffs' motion to amend, the Court noted that the FAC and SAC were "improper

9    'shotgun' pleadings" because they incorporated numerous paragraphs by reference without

10   stating what specific liberty or property interests were at issue. (ECF No. 25 at 10-11.) The TAC

11   suffers from the same defect. For example, in support of the first cause of action, Plaintiffs

12   incorporate preceding paragraphs 13 through 46, which encompasses the vast majority of

13   Plaintiffs' narrative of allegations regarding their five-year ongoing dispute with the County,

14   including the history of the STVR policy dating back to 2016, fire and safety codes, the 2017

15   Mission Fire, Plaintiffs' 2016 zoning complaint, Plaintiffs' state court litigation, and the 2017

16   amendments to the MCC. (*Id.* at 18-22.) This cause of action encompasses various legal theories,

17   including that the STVR policy has been "selectively enforced . . . in a discriminatory manner"

18   since 2016 and the denial of a CUP hearing to neighbors of STVR properties violates "equal

19   protection, procedural due process, First and Fourteenth amendment rights [sic]." (*Id.* at 18-22.)

20   As with the FAC and SAC, the TAC incorporates lengthy paragraphs of factual allegations

21   without indicating what specific liberty or property interests are at issue.

22        The requirement of a short and plain statement is not a mere technicality in a case such as

23   this. Plaintiffs' claims are primarily based on their lengthy dispute with County regarding

24   enforcement or lack of enforcement of zoning, water, and fire codes. This dispute is long-running

25   and varied and has involved at least one state court case. (*See* ECF No. 27 at 10-14.) As discussed

26   above, the Court is not an appeals court for the county on issues of land use, zoning, or other local

27   matters, which are sensitive areas of social policy that are best reserved to state and local

28   authorities. The TAC seeks to raise these issues in federal court by purporting to set forth federal

14

1   constitutional claims. However, without a clear and plain statement of Plaintiffs' claims, the

2   Court cannot discern what, if any, of these underlying facts give rise to federal constitutional

3   violations. Defendants have also raised colorable defenses, including the statute of limitations and

4   legislative immunity. Without compliance with Rule 8(a), the Court cannot determine which, if

5   any, of Plaintiffs' claims could survive such challenges.

6   The Court attempted to gain a better understanding of the constitutional claims at issue

7   during a long and detailed oral argument, which it incorporates into this order. (*See* ECF No. 39.)

8   To the extent the Court was able to discern the basis of Plaintiffs' asserted federal claims, it is

9   analyzing those claims below. However, any other claims are dismissed without further leave to

10   amend under Rule 8(a).

11   **B.    Fourteenth Amendment Equal Protection**

12   Plaintiffs' first, second, and third causes of action reference equal protection claims. (ECF

13   No. 27 at 18-29.) At the hearing on the motion, Plaintiffs' counsel described the equal protection

14   challenge as follows: Plaintiffs are a class defined as residential property owners who have been

15   deprived of notice and a chance to object to non-conforming properties in their county. While

16   some property owners, including those using the properties as STVRs, received certain notices

17   and a chance to object, Plaintiffs do not.

18   The Equal Protection Clause requires that persons who are similarly situated be treated

19   alike. *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985) ("The Equal

20   Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any

21   person within its jurisdiction the equal protection of the laws,' which is essentially a direction that

22   all persons similarly situated should be treated alike.") (citations omitted); *Hartmann v.*

23   *California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013) ("The Equal Protection

24   Clause requires the State to treat all similarly situated people equally."); *Furnace v. Sullivan*, 705

25   F.3d 1021, 1030 (9th Cir. 2013); *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008). To state a

26   claim, Plaintiffs must allege facts showing that Defendants intentionally discriminated against

27   them based on their membership in a protected class, *Hartmann*, 707 F.3d at 1123, *Furnace*, 705

28   F.3d at 1030, or that similarly situated individuals were intentionally treated differently without a

1    rational relationship to a legitimate state purpose, *Engquist v. Oregon Department of Agr.*, 553

2    U.S. 591, 601-02 (2008), *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008).

3           The Court finds that residential property owners are not a protected class for purposes of

4    the Equal Protection Clause. The Supreme Court has explained that a protected class is one that is

5    "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or

6    relegated to such a position of political powerlessness as to command extraordinary protection

7    from the majoritarian pollical process." *Massachusetts Bd. Of Retirement v. Murgia,* 4276 U.S.

8    307, 313 (1976) (quoting *San Antonio Independent School Dist. v. Rodriguez,* 411 U.S. 1, 28

9    (1973); *see also Cleburne,* 473 U.S. at 440 (acknowledging race, alienage, or national origin as

10   protected classes). Defendants' motion correctly argues that the TAC fails to identify a protected

11   class. (ECF No. 29-1 at 22.) At the hearing, Plaintiffs' counsel conceded that she did not have any

12   case law supporting the proposition that residential property owners are a protected class under

13   the Equal Protection Clause, and Plaintiffs' opposition brief cites to none. Likewise, the Court is

14   unaware of any authority indicating that residential property owners require the "extraordinary

15   protection" afforded to protected classes.

16          Instead, Plaintiffs appear to be proceeding under a "class of one" theory, *i.e.* that they

17   were intentionally treated differently from others who were similarly situated without a rational

18   basis for the difference in treatment. However, "[a] class of one plaintiff must show that the

19   discriminatory treatment 'was intentionally directed at just [them], as opposed . . . to being an

20   accident or random act.'" *N. Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008)

21   (quoting *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001). Thus, to bring a "class of one" claim, a

22   plaintiff must show that other similarly situated individuals were treated better or differently than

23   the plaintiff. *See Village of Willowbrook v. Olech*, 528 U.S 562, 564 (2000) ("Our cases have

24   recognized successful equal protection claims brought by a 'class of one,' where the plaintiff

25   alleges that she has been intentionally treated differently from others similarly situated and there

26   is no rational basis for the difference in treatment."). "Class of one" claims are difficult to

27   establish; they fail if "there is any reasonably conceivable state of facts that could provide a

28   rational basis for the challenged [government action]." *Merrifield v. Lockyer*, 547 F.3d 978, 989

1    (9th Cir. 2008) (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993) ) (internal

2    quotation marks omitted).

3         Here, Plaintiffs fail to allege a "class of one" equal protection claim. Defendants argue

4    that Plaintiffs have not alleged that they were treated differently than any other similarly situated

5    individuals or that there was no rational basis for the difference in treatment. (*See* ECF No. 29-1

6    at 23.) The Court agrees. The TAC alleges that the STVR policy, as codified in the amendments

7    to the MCC, does not require a hearing at all for STVRs. (*See* ECF No. 37 at 18 ("MADERA

8    COUNTY specifically denies the right to the CUP hearing to impacted neighboring properties of

9    STVRs with non-conforming uses." . . . "In 2016, 2020 and 2021 the HAMILTONS were denied

10   equal protection of the law in that MADERA COUNTY did not provide notice and a hearing for

11   issuance of licenses and approvals of uses in single family residential of their rental properties

12   pursuant to the STVR Policy."). Plaintiffs do not allege that any similarly situated individuals

13   were provided notice and a hearing while they were not. In other words, Plaintiffs are merely

14   challenging a County rule regarding what notice and hearing are provided, or not provided, for

15   County decisions regarding STVR uses. There are no allegations that Plaintiffs were singled out

16   and unilaterally denied a right to a hearing. Instead, the lack of hearing is the same for all

17   individuals, including all residential property owners. Thus, the TAC fails to plead facts showing

18   differential treatment and Plaintiffs' equal protection claims are subject to dismissal.[2]

19         **C.    Fourteenth Amendment Due Process**

20         The TAC's first, second, and third causes of action all reference Fourteenth Amendment

21   due process claims. (ECF No. 27 at 18-28.) As further described at the hearing, Plaintiffs assert

22   that they were deprived of a property right by the County allowing STVRs on residential

23   properties without notice and hearing. Defendants, in turn, argue that Plaintiffs do not have a

---

[2] At the hearing, Plaintiffs also argued that the TAC asserts a "class of one" equal protection claim related to their
dispute over access to a water system on a neighboring parcel. Defendants, in turn, argued that there are no facts
alleged showing arbitrariness and animosity by the County in the TAC. Additionally, Defendants' motion asserts that
there was a rational reason for the County's refusal to get involved, namely that the water system was located on an
adjoining parcel and the owner of that parcel applied for the permits at issue. (ECF No. 29-1 at 23.) The Court agrees
that the TAC does not allege any facts showing that the County's actions or inactions regarding the water system
dispute between Plaintiffs and their neighbor were intentionally directed at Plaintiffs and lacked a rational basis.
Plaintiffs' conclusory assertions that the County's acts were discriminatory, arbitrary, and malicious are insufficient
to state a "class of one" equal protection claim.

1    constitutional right to a CUP hearing. (ECF No. 29-1 at 14.)

2        "A threshold requirement to a substantive or procedural due process claim is the plaintiff's

3    showing of a liberty or property interest protected by the Constitution." *Wedges, Ledges of Cal.,*

4    *Inc. v. City of Phoenix, Ariz.,* 24 F.3d 56, 62 (9th Cir. 1994) (citing *Bd. of Regents v. Roth,* 408

5    U.S. 564, 569 (1972)). The Constitution does not create protected property interests; they instead

6    spring from "an independent source such as state law-rules or understandings that secure certain

7    benefits and that *support claims of entitlement* to those benefits." *Thornton v. City of St.*

8    *Helens,* 425 F.3d 1158, 1164 (9th Cir. 2005) (citing *Roth,* 408 U.S. at 577) (emphasis added).

9    Moreover, a "legitimate claim of entitlement" is more than a "unilateral expectation of a benefit

10   or privilege," *Nunez v. City of L.A.,* 147 F.3d 867, 872 (9th Cir. 1998) (internal quotations

11   omitted), but is "determined largely by the language of the statute and the extent to which the

12   entitlement is couched in mandatory terms," *Wedges, Ledges of Cal.,* 24 F.3d at 62 (internal

13   quotation omitted). In short, property interests arise only when the state law "truly ma[kes]

14   [conferral of the benefit] *mandatory.*" *Town of Castle Rock, Colo. v. Gonzales,* 545 U.S. 748, 760

15   (2005) (emphasis in original).

16       At the hearing and in their opposition, Plaintiffs cited to *Scott v. City of Indian Wells,* 6

17   Cal.3d 541 (1972) ("*Scott*") in support of the proposition that the right to notice and a CUP

18   hearing is a protected property interest for residential property owners in the neighborhood. (ECF

19   No. 33 at 10-11.) In *Scott,* the city provided notice of a hearing on a conditional use permit to

20   construct a planned development within the city on land that abutted the plaintiffs' property.

21   *Scott,* 6 Cal.3d at 544. Notice was mailed to the plaintiffs by mistake and no other abutting

22   property owners, who resided outside the city limits, were notified of the hearing, although city

23   residents were provided notice. *Id.* In overruling the lower court's sustaining of a demurrer, the

24   California Supreme Court held that the city was required to give the abutting property owners the

25   same amount of notice it gave to similarly situated city residents. *Id.* at 549.

26       However, *Scott* does not stand for the general proposition that all neighbors must be given

27   notice and a hearing for STVR uses, and the Court otherwise finds *Scott* to be distinguishable. In

28   *Scott,* the applicable code required notice and a CUP hearing, and the only issue was whether the

1  city was required to give notice to adjoining landowners who lived outside city boundaries to the

2  same extent it was required to give notice to city residents. The California Supreme Court held

3  that the city "owes adjoining landowners who are not city residents a duty of notice to *the extent*

4  *given similarly situated city residents*[.]" *Scott,* 6 Cal.3d at 549 (emphasis added). Unlike *Scott,*

5  Plaintiffs do not allege that the County is failing to give them notice to the same extent similarly

6  situated neighbors are receiving notice. Instead, the TAC alleges that all neighbors are treated the

7  same and the MCC does not require notice and a hearing *at all* for STVR uses. (*See* ECF No. 27

8  at 6.)

9  　　　　Plaintiffs do not cite to, and the Court is not aware of, any state law establishing a right to

10  a CUP hearing for a neighboring property's STVR. Thus, Plaintiffs have failed to allege a

11  protected property interest subject to due process protection.

12  　　　　**D.　　First Amendment Right to Petition**

13  　　　　The TAC's first and third causes of action reference violations of Plaintiffs' First

14  Amendment rights. (ECF No. 27 at 18-29.) At the hearing, Plaintiffs' counsel clarified that

15  Defendants interfered with Plaintiffs' right to petition by amending the MCC at the same time as

16  the briefing on Plaintiffs' state court motion for preliminary injunction, causing costs and delay in

17  the state court litigation, and arbitrarily favoring the owner of a neighboring parcel in a water

18  system access dispute. Defendants argue that the TAC fails to allege interference with the right to

19  petition because Plaintiffs do not have a constitutional right to a response to their efforts. (ECF

20  No. 29-1 at 17, 22.)

21  　　　　"The First Amendment protects the right of an individual to speak freely, to advocate

22  ideas, to associate with others, and to petition his government for redress of grievances." *Smith v.*

23  *Arkansas State Highway Emp., Local 1315,* 441 U.S. 463, 464 (1979). However, the First

24  Amendment "provides no guarantee that a speech will persuade or that advocacy will be

25  effective. . . . [T]he First Amendment does not impose any affirmative obligation on the

26  government to listen [or] to respond[.]" *Id.* at 464-65.

27  　　　　Here, the TAC alleges that Plaintiffs filed state court litigation alleging that a specific

28  STVR use in their neighborhood violated the applicable covenants, conditions, and restrictions

("CC&Rs") and that Defendants changed the MCC to prevent entry of a permanent injunction. (ECF No. 27 at 10-11.) After the MCC amendments, Plaintiffs amended the CC&Rs based on the advice of legal counsel, the state court defendants informed the state court that they would no longer operate the STVRs against the new CC&Rs, and the state court found that the voluntary cessation rendered a permanent injunction unnecessary. (*Id.* at 13.) There are no factual allegations indicating that the Defendants prohibited Plaintiffs from filing the state court litigation or otherwise impeded their right to petition the courts. Instead, Plaintiffs allege that a permanent injunction was denied because Plaintiffs amended the applicable CC&Rs and the state court defendants voluntarily stopped operating an STVR. Nothing in these factual allegations states a First Amendment violation.

Similarly, Plaintiffs have failed to allege any facts supporting their conclusion that Defendants interfered with their rights to petition in the course of their water dispute with their neighbor. The TAC details several efforts that Plaintiffs made to gain access to a water system located on a neighboring parcel, including attending an in-person meeting with County staff, obtaining a temporary restraining order against the neighbor, requesting cancellation of the neighbors' permits, appealing the denial of the request for cancellation, and filing a permit to install an electrical system for the well. (ECF No. 27 at 14-17.) However, Plaintiffs again do not allege any facts indicating that Defendants prohibited Plaintiffs from petitioning for redress of their grievances. Instead, Plaintiffs' claim is premised on Defendants' refusal to consider or act upon their grievances, which are entirely local land-use matters. Defendants are only alleged to have ignored Plaintiffs, which does not amount to a denial of the right to petition. *Smith,* 441 U.S. at 466 ("[A]ll that the Commission has done in its challenged conduct is simply to ignore the union. That it is free to do.").

Thus, Plaintiffs' claims for violation of their First Amendment right to petition the government are subject to dismissal for failure to state a claim.

## E.    Fair Housing Act

The TAC's fifth cause of action asserts a claim for violation of the Fair Housing Act ("FHA"), 42 U.S.C. § 3601. (ECF No. 27 at 32.) Plaintiffs allege that the STVR policy "resulted

1   in a discriminatory impact for prospective renters that are faced with the reduction of housing and

2   increased rental prices, including minorities and families with children." (*Id.* at 33.) Defendants

3   argue that the TAC's allegations are conclusory and Plaintiffs are not aggrieved persons under the

4   FHA. (ECF No. 29-1 at 27-28.) Plaintiffs, in turn, contend that they are aggrieved persons

5   because they have been injured by the discriminatory STVR policy. (ECF No. 33 at 13.)

6          Under the FHA, an "aggrieved person" is defined as "any person who claims to have been

7   injured by a discriminatory housing practice; or believes that such person will be injured by a

8   discriminatory housing practice that is about to occur." 42 U.S.C. § 3602(i). "Discriminatory

9   housing practice," in turn, refers to an act that is unlawful under sections 3604, 3605, 3606, or

10  3617, which generally describe various forms of discrimination on the basis of race, color,

11  religion, sex, handicap, familial status, or national origin. 42 U.S.C. § 3602(f).

12         The TAC's allegations that Plaintiffs have been injured by a discriminatory practice in

13  violation of the FHA are conclusory and unsupported by factual allegations. While the TAC

14  alleges that Plaintiffs have an interest in "maintaining the safety and character of the

15  neighborhood where they reside and/or own property," the TAC does not specify how the "safety

16  and character" of the neighborhood was negatively affected by the STVR policy. (*See* ECF No.

17  27 at 33.) This issue is further compounded by the fact that the fifth cause of action incorporates

18  more than 25 preceding paragraphs of factual allegations regarding the history of the STVR

19  policy and the state court litigation. The TAC's general allegations that Plaintiffs have been

20  affected by the STVR policy are insufficient. *See Hood River County v. U.S. By and Through*

21  *Dept of Labor,* 532 F.2d 1236, 1239 (9th Cir. 1976) (reasoning that "[a] general allegation . . .

22  that [plaintiffs] have been adversely affected is insufficient" to establish injury in fact).

23  Additionally, the FHA requires that Plaintiffs' injury result directly from the discriminatory

24  housing practice, rather than generally flow from the STVRs themselves. *See City of Oakland v.*

25  *Wells Fargo & Co.,* 14 F.4th 1030 (9th Cir. 2021) (recognizing that "'foreseeability alone' is not

26  sufficient to establish proximate cause" and there must be "'some direct relation between the

27  injury asserted and the injurious conducted alleged'" in FHA cases) (quoting *Bank of America*

28  *Corp. v. City of Miami,* --- U.S. ---, 137 S.Ct. 1295, 197 L.Ed.2d 678 (2017)). As a result, the

21

1 TAC fails to state a claim under the FHA.

2       **F.**    **State Law Claims**

3      As noted above, federal courts are courts of limited jurisdiction and only have original

4 jurisdiction over diversity and federal question cases. 28 U.S.C. § 1331. Under 28 U.S.C. § 1367,

5 federal courts "have supplemental jurisdiction over all other claims that are so related to claims in

6 the action within such original jurisdiction that they form part of the same case or controversy

7 under Article III of the United States Constitution." 28 U.S.C § 1367(a). District courts may

8 decline supplemental jurisdiction if:

9             (1) the claim raises a novel or complex issue of State law,

10
11             (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

12             (3) the district court has dismissed all claims over which it has original jurisdiction, or

13             (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

14
15 28 U.S.C § 1367(c)(1)-(4). "The court's discretion to decline jurisdiction over state law claims is

16 informed by the values of judicial economy, fairness, convenience, and comity." *Snell v.*

17 *Deutsche Bank Nat. Tr. Co.*, 2015 WL 1440295, at *6 (E.D. Cal., Mar. 27, 2015) (citing *Acri v.*

18 *Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (*en banc*)).

19      Here, the TAC asserts several claims arising under state law, including violations of the

20 California Constitution, violations of mandatory duties under California Government Code §

21 815.6, and housing discrimination under California Government Code § 65008. As noted above,

22 the TAC is subject to dismissal for failure to comply with Rule 8(a). The Court has analyzed

23 Plaintiffs' federal claims to the extent it was able to ascertain the bases for those claims and, for

24 the foregoing reasons, finds that the TAC fails to state any discernable federal claims. The Court

25 declines to exercise supplemental jurisdiction on any potential remaining claims. 28 U.S.C. §

26 1367(c)(3). Thus, the Court will dismiss Plaintiff's state law claims without prejudice for lack of

27 subject matter jurisdiction.

28 ///

### G.    Leave to Amend

This is Plaintiffs' third amended complaint. Plaintiffs were previously provided the relevant pleading standards under Rule 8(a), and were directed to "refer to specific allegations or otherwise clearly describe what actions by specific defendants violated Plaintiffs' rights." (ECF No. 25 at 13.) Plaintiffs have nonetheless failed to fully cure the deficiencies with their complaint. Therefore, the motion to dismiss is granted without leave to amend. *Carvalho v. Equifax Info. Servs., LLC,* 629 F.3d 876, 893 (9th Cir. 2010) ("[T]he district court may exercise its discretion to deny leave to amend due to . . . repeated failure to cure deficiencies by amendments previously allowed[.]").

## VI.    CONCLUSION AND ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.  Defendants' motion to dismiss (ECF No. 29) is GRANTED without leave to amend;

2.  Plaintiffs' state law claims for violations of the California Constitution and California Government Code §§ 815.6, 65008 are dismissed without prejudice for lack of jurisdiction; and

3.  The Clerk of Court is directed to terminate all pending motions and to close this case.

IT IS SO ORDERED.

Dated:   __December 6, 2021__          /s/ *Erica P. Grosjean*
                                        UNITED STATES MAGISTRATE JUDGE